# United States Court of Appeals
## For the First Circuit

No. 07-1884

UNITED STATES OF AMERICA,

Appellee,

v.

TIMI WALLACE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Selya, and Lipez,
Circuit Judges.

Camille A. McKenna, with whom Mann and Mitchell was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Robert Clark Corrente, United States Attorney, and Lee H. Vilker, Assistant United States Attorney, were on brief, for appellee.

July 23, 2009

**LIPEZ**, <u>Circuit Judge</u>. On October 15, 2004, after a four-day trial, a jury convicted appellant Timi Wallace of various crimes related to the September 2000 armed robbery of a firearms store in Providence, Rhode Island. He was sentenced to twenty-five years in prison (300 months). Wallace appealed, challenging both the validity of his convictions and the sentence imposed by the trial court. In a detailed opinion, we affirmed Wallace's convictions, but held that several sentencing errors required a remand. <u>See</u> <u>United States</u> v. <u>Wallace</u>, 461 F.3d 15 (1st Cir. 2006). At the resentencing hearing, the district court imposed a 294-month term of imprisonment, six months less than its prior sentence. Wallace now appeals for a second time, raising a number of challenges to the sentence imposed by the district court on remand.

These objections fall into three categories. First, Wallace raises for the first time two claims of error that, although they were available to him, he did not pursue in his first appeal. Second, he explicitly asks us to reconsider two objections that we resolved against him in the first appeal. We find all of the preceding claims barred by the law of the case doctrine. Finally, Wallace challenges the district court's decision to depart upwardly from the United States Sentencing Guidelines on the basis of his underrepresented criminal history and the extreme psychological injuries suffered by the victims of the robbery, and asserts that his sentence, taken as a whole, was unreasonable.

Although these last claims are properly before us, we affirm the district court in all respects.

## I.

Because our opinion in the first appeal describes the offense, the trial, and the first sentencing in detail, see Wallace, 461 F.3d at 19-24, we limit ourselves to those facts which are most relevant to his claims of error in this appeal.

### A. The Offense

On September 25, 2000, appellant's brother, Nickoyan Wallace ("Nickoyan"), entered a firearms dealership in Providence, Rhode Island, and asked to see certain merchandise. The store's owner, Donn DiBiasio, and his assistant, Donna Gallinelli, were on duty. As Gallinelli was retrieving the items that Nickoyan had requested, appellant entered the store, brandishing a semi-automatic weapon known as a "TEC-9." He then ran up to DiBiasio, pointed the gun at him, and yelled "Don't move." When Gallinelli tried to escape, Nickoyan drew a handgun which he pointed at her, ordering her to stop. Next, Nickoyan leapt over the counter and forced Gallinelli to open the display case, specifically demanding that she retrieve certain high-caliber weapons. He stole six of these high-caliber handguns and, heeding appellant's instruction to hurry up, fled the store with his brother.

Although Nickoyan was arrested and tried almost immediately, appellant, using a variety of aliases and other

deceptive tactics, managed to evade arrest until July 2004. After a four-day jury trial, he was convicted of obtaining six firearms by robbery, in violation of 18 U.S.C. § 1951 (Count I of the indictment); conspiracy to obtain the firearms by armed robbery, also in violation of 18 U.S.C. § 1951 (Count II); theft of firearms from a federally licensed firearms dealer, in violation of 18 U.S.C. § 922(u) (Count III); and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count IV).

**B. The First Sentencing**

Grouping Counts I and II, the 18 U.S.C. § 1951 charges, for a base offense level of 20 under the Guidelines, the pre-sentence report ("PSR") recommended a two-level enhancement for physical restraint of victims, a one-level enhancement for theft of a firearm, and a two-level enhancement for obstruction of justice through perjury, yielding an adjusted offense level of 25.[1] For Count III of the indictment, stealing a firearm from a federally licensed dealer, the PSR started at a base offense level of 20. To this base offense level, the PSR added a three-level enhancement because the number of firearms unlawfully received or possessed

---

[1] The PSR, as well as all subsequent court proceedings, applied the 1998 Guidelines Manual, and we therefore do the same. See Wallace, 461 F.3d 22 n.3. Accordingly, all references to the Guidelines refer to the 1998 Manual, unless otherwise noted.

-4-

during the offense was between eight and twelve;[2] a two-level enhancement because the firearms were stolen; and the same two-level enhancements for physical restraint of victims and obstruction of justice that were applied to the robbery counts. The adjusted offense level for Count III was therefore 29. Because Counts I - III involved the same victims and conduct, the PSR adopted the higher of the two offense levels (29). See Wallace, 461 F.3d at 23 (citing U.S.S.G. § 3D1.2(b)). Finally, Count IV of the indictment, the brandishing count, carried a mandatory eighty-four month (seven-year) consecutive term.

Since Wallace had no criminal convictions, the PSR classified him as criminal history category I. In combination with the adjusted offense level of 29 for Counts I-III, this category yielded a sentencing range of 87-108 months, to run consecutively with the 84 months required by the brandishing count.

At sentencing, the district court concluded that the guidelines range calculated by the PSR was inadequate, and decided to depart upwardly five levels to an offense level of 34. It also assigned a criminal history category of III to account for his commission of the crime while under indictment for another felony.[3]

---

[2] Although Wallace was convicted of stealing six firearms from the store, the multiple weapons enhancement included the two guns that the defendant and his co-conspirator brandished during the robbery. See U.S.S.G. § 2K2.1(b)(C); Wallace, 461 F.3d at 35.

[3] As we discuss infra, the district court's finding that Wallace was under indictment for another felony was erroneous. As

-5-

All told, the court sentenced appellant to 216 months for Counts I and II, 120 months for Count III (to be served concurrently with the term for Counts I and II), and 84 months for Count IV to be served consecutively.  Thus, Wallace received a total sentence of 300 months, or 25 years, in prison.

**C. The First Appeal**

In his first appeal, Wallace challenged his convictions as well as the sentence, both of which he assailed on numerous grounds.  Because our reasons for upholding the convictions are irrelevant to this appeal, we provide a brief summary of the sentencing portion of our decision only.

Wallace had argued "that the sentence was based on error . . . both in terms of the court's calculation of the advisory guidelines range and its application of the guidelines provisions to depart upwardly from that range."  461 F.3d at 30.[4]  We first addressed Wallace's claims of error in the PSR's recommended advisory guidelines range, holding that the district court properly imposed both the two-level enhancement for the physical restraint of a victim and the three-level enhancement for the number of

---

the PSR correctly noted, there had been a complaint lodged in Massachusetts state court accusing appellant of murdering his own brother, Tasfa Wallace, but the case had not yet proceeded to an indictment.

[4] Wallace also challenged the substantive reasonableness of his sentence.  Because of our other rulings, we did not need to reach this issue on his first appeal.

-6-

firearms involved in the offense. We then considered the sentencing court's upward departure from the guidelines, and concluded that both appellant's use of a dangerous instrumentality in the commission of the offense and the disruption of government functions caused by appellant's four-year evasion of arrest were proper grounds for an upward departure. However, we also found that the sentencing court had erred in upwardly departing on the basis of (i) obstruction of justice; (ii) extreme psychological injury to the victims of the offense; (iii) facilitation of criminal purpose; and (iv) defendant's criminal history category. We found that the district court's decision to depart upwardly on three of these grounds, without any factual basis in the record, in combination with an insufficient explanation as to a fourth ground, constituted plain error that had affected Wallace's substantial rights. Id. at 44. Accordingly, the case was "remanded for resentencing." Id. at 45.

**D. Resentencing**

At resentencing, the district court first reviewed the PSR and reiterated its earlier findings that: the total offense level for Counts I-III was 29; defendant's criminal history category was I; and the brandishing charge carried a mandatory 84-month sentence. Defense counsel then "reiterat[ed] all the prior objections that were filed by prior counsel," referring,

apparently, to the original objections to the PSR which had been filed before the first sentencing. The court responded:

> I don't think we need to have much discussion about those issues, because, unless there's something new, I think those were argued before me previously. They were denied. The Court of Appeals in its thorough opinion reviewed the basis for those objections and rejected them.
>
> So I would simply incorporate what is said by the Court of Appeals with respect to those objections, and to the extent they're reiterated here, then they're denied.

Next, Mr. DiBiasio, the owner of the gun store who was on duty at the time of the robbery, testified in detail about the impact of the crime on his life and mental health.

After this testimony and argument from counsel, and on the government's motion, the court again decided to depart upwardly from the guidelines sentencing range. The departure was based on four different grounds, two of which we had affirmed in the first appeal and two of which we had reversed. Specifically, the court reimposed a two-level increase for Wallace's use of dangerous weapons during the offense and a one-level increase for his disruption of government function, both of which we had previously found to be appropriate grounds for an upward departure. However, in light of our holding that the upward departure for extreme psychological injury to the victim had been insufficiently justified at the original sentencing, the court explained at length on remand why a two-level departure was indeed warranted. Taken

together, and starting from the base offense level of 29, these grounds for departure yielded a total offense level of 34 (29 + 2 + 1 + 2). Finally, the district court chose to impose on remand only a one-level criminal history departure, placing appellant in criminal history Category II. We had previously reversed the district court's original two-level criminal history departure.

The revised Guidelines analysis thus yielded a total offense level of 34, a criminal history category of II, and a guidelines sentencing range of 168-210 months on Counts I-III, plus the mandatory 84-month term from the brandishing charge. After weighing the factors enumerated in 18 U.S.C. § 3553, the court chose a sentence at the top of the guidelines range and imposed a term of imprisonment of 294 months, or 6 months fewer than its prior sentence. Finally, the court explained why Wallace's sentence of 294 months imprisonment, as compared with Nickoyan's 204-month term, did not create an inappropriate sentencing disparity.

**E. Wallace's Challenges to Resentencing**

In the instant appeal, the government argues that several of Wallace's numerous challenges to the sentence imposed on remand are barred, in one way or another, by the law of the case doctrine. These potentially precluded claims fall into two categories. First, there are two grounds for departure - the dangerous weapons and disruption of government function grounds - that we upheld as

valid in Wallace's first appeal, but that he now asks us to "reconsider." Second, there are two enhancements - for obstruction of justice and for appellant's use of stolen weapons - that were first imposed at the initial sentencing and which, after Wallace failed to challenge them in the first appeal, were reimposed on remand. After setting forth the law of the case doctrine as it applies here, we address briefly each issue in both categories in turn, and then move to those objections that are properly before us.

## II.

### A. Law of the Case Doctrine

Under the law of the case doctrine, "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Naser Jewelers, Inc. v. City of Concord, 538 F.3d 17, 20 (1st Cir. 2008) (quoting Arizona v. California, 460 U.S. 605, 618 (1983)). We have explained that this doctrine has two branches. The first branch - the so-called "mandate rule" - "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004). The second branch binds successor appellate panels in a second appeal in the same case. Id. Both branches are implicated here.

### 1. The mandate rule

We explained the mandate rule in United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993):

> The black letter rule . . . is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date . . . . Abandoning this prudential principle would threaten the important policy considerations underlying the law of the case doctrine, such as "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy."

(citation omitted).

In United States v. Ticchiarelli, 171 F.3d 24 (1st Cir. 1999), the defendant had originally been sentenced as a manager or supervisor of a conspiracy. Id. at 28. In his first appeal, he raised a number of issues, but did not challenge the district court's determination that he was a manager for sentencing purposes. Id. On remand, the district court denied his request to reopen this issue, invoking the law of the case doctrine. Id. On appeal, we considered "whether the district court was correct in not hearing the matter again," id., and found that it was:

> The court was plainly correct [in refusing to reopen the issue]. This is not a question of what leeway there is to explore on remand an issue directly related to the matter being

> remanded. This is rather a question of whether a party, not having appealed from an aspect of explicit findings and conclusions at sentencing, is free on remand as to a different unrelated issue to require the court to hear that aspect again.

Id. We rejected the argument that because we had not addressed the issue in the first appeal, the district court was free to reconsider the issue. That argument missed "the basic point" of the doctrine: that "findings and conclusions that are not appealed and are not related to the issues on appeal are treated as settled." Id. at 29.[5]

However, we have also recognized that, "even where . . . an appellate court's mandate does not contemplate resurrecting an issue on remand, the trial court may still possess some limited discretion to reopen the issue in very special situations." Bell, 988 F.3d at 250-51. The standard for reconsidering an issue under the mandate rule requires a showing of what we have termed "exceptional circumstances": a change in controlling legal authority, significant new evidence not earlier obtainable with due

_____

[5] We also reject Wallace's argument that the result of his prior appeal was a "general remand" that allowed the district court to review all sentencing matters de novo. "Although some circuits do generally allow de novo resentencing on remand, the First Circuit does not." United States v. Cruzado-Laureano, 527 F.3d 231, 234 (1st Cir. 2008) (citations omitted). This is the thrust of our decision in Ticchiarelli - that upon a resentencing after a remand, the district court may only consider "such new arguments or new facts as are made newly relevant by the court of appeals' decision - whether by the reasoning or by the result." Id. at 235 (citing Ticchiarelli, 171 F.3d at 32).

-12-

diligence, or the prospect of a serious injustice.  See Bell, 988 F.3d at 251.

2. Subsequent Appellate Panel Rule

This branch of the law of the case doctrine "contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court."  Moran, 313 F.3d at 7.  A panel's reconsideration of a ruling made by a previous panel in the same case may be proper "if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative," if there has been "a material change in the controlling law," if "newly discovered evidence bears on the question," or if reconsideration would "avoid manifest injustice." Ellis v. United States, 313 F.3d 636, 647-48 (1st Cir. 2002).  "A finding of manifest injustice requires a definite and firm conviction that a prior ruling on a material matter is unreasonable or obviously wrong," as well as a finding of prejudice.  Id. at 648-49 & 648 n.5.

3. Wallace's Waiver Argument

Wallace argues that we should not apply the law of the case doctrine to any of his claims because the government did not explicitly raise the law of the case at resentencing before the district court, and hence should be precluded from invoking it on appeal.  In support of this argument, appellant cites United States

-13-

v. Lorenzo-Hernández, 279 F.3d 19, 22 (1st Cir. 2002), where we refused to punish the defendant for the district court's failure to apply the mandate rule because "the government did not present" the argument to the district court. We stated that "[i]f the government wishes to assert at resentencing before the district court after remand that certain issues resolved earlier should not be revisited, it should say so then." Id. Thus, to the extent appellant may rely on this case, it is only for its implications about the proper application of the mandate rule. Since oral argument in this case, we have again rejected the government's argument that the mandate rule should have barred an appellant's claim after resentencing because the government had "failed to make th[e] argument to the district court." United States v. Olivero, 552 F.3d 34, 41 n.4 (1st Cir. 2009).

Both of these cases are inapposite. In each, the district court at resentencing fully considered the defendant's sentencing challenge, with no substantive opposition from the government, which then sought to invoke the mandate rule for the first time on appeal. Thus, much of the efficiency gains provided by the doctrine were already lost. Here, however, after Wallace's cursory statement that he "reiterat[ed] all the prior objections [to the PSR] that were filed by prior counsel," the district court properly replied that there was no need for discussion of those issues, "unless there [was] something new," because those issues

-14-

"were argued before [the court] previously.  They were denied."
The court also incorporated by reference anything we had said with
respect to those objections in Wallace's first appeal, and noted
that, to the extent those objections were reiterated at
resentencing, they were denied.  Accordingly, without referring to
the law of the case doctrine explicitly, the court essentially
applied the mandate rule to Wallace's arguments; the government
never had occasion to raise it.  Under these circumstances, with
the district court applying the law of the case doctrine itself,
there was no need for the government to invoke the doctrine below,
and Lorenzo-Hernández and Olivero do not apply.[6]

_____

[6] Wallace also argues that the government's failure to raise
the law of the case below precludes us from applying the subsequent
appellate panel rule to those issues that he explicitly asks us to
"reconsider."  We fail to see how a doctrine directed at subsequent
appellate panels can be waived by failure to raise it at the trial
level.  We also note that the dicta in Lorenzo-Hernández and
Olivero should not be understood to suggest that the government
waives all law of the case arguments by failing to raise them in
the district court.  Frankly, we are uneasy with this dicta, which
would impose a burden on us to reconsider issues already decided.
The prudential law of the case doctrine is ultimately directed at
conserving judicial resources and preserving the integrity of our
own processes.  See, e.g., Ellis, 313 F.3d at 647; United States v.
Rivera-Martinez, 931 F.2d 148, 149 (1st Cir. 1991).  We therefore
reject any intimation in our cases that we cannot raise the law of
the case issue sua sponte if we deem it appropriate.  See, e.g.,
Maxfield v. Cintas Corp. No. 2, 487 F.3d 1132, 1135 (8th Cir.
2007); Bollinger v. Or., 172 F. App'x 770, 771 (9th Cir. 2006);
DiLaura v. Power Auth. of State of N.Y., 982 F.2d 73, 76 (2d Cir.
1992).

-15-

## B. Objections Not Raised in the First Appeal

### 1. Obstruction of Justice Enhancement

The original PSR recommended a two-level sentencing enhancement under U.S.S.G. § 3C.1.1 for obstruction of justice based on Wallace's perjury. He timely objected. At the initial sentencing, the court stated that an upward departure beyond the two-level enhancement was appropriate. In his first appeal, Wallace did not challenge the application of the two-level enhancement for obstruction of justice as recommended by the PSR; instead, he appealed only the court's subsequent upward departure from that two-level enhancement. See Wallace, 461 F.3d at 38 n.12.

In this appeal, Wallace attempts to use the court's response to his reiteration of all original objections to the PSR (stating that his objections had been reviewed and rejected on appeal) to argue that the district court erroneously concluded that we had affirmed the obstruction of justice enhancement. As Wallace correctly points out, because he elected not to challenge the district court's application of the two-level enhancement in his first appeal, we did not consider it. Wallace misguidedly insists that this fact actually helps his position, claiming that when he reincorporated all of his original objections to the PSR at resentencing, the objection to the obstruction of justice enhancement was somehow resurrected and, therefore, it is appropriate for us to consider it in this second appeal.

-16-

We will not reach appellant's argument that the enhancement was erroneously applied. When Wallace failed to challenge the obstruction of justice enhancement the first time around, it became the law of the case. See Bell, 988 F.2d at 250. The district court appropriately noted that, unless there was something new, appellant's original objections to the PSR did not merit discussion and, "to the extent they [were reiterated at resentencing]," were once again denied. Thus, the district court properly applied the mandate rule and refused to consider Wallace's cursory objection to this enhancement.

Nor does this claim fit within any of the recognized exceptions to the mandate rule. We explicitly reject the argument (found only in Wallace's reply brief) that failure to reexamine the issue would result in a serious injustice. He argues that the enhancement was unwarranted because the district court made no findings regarding his perjury at either sentencing, citing United States v. Dunnigan, 507 U.S. 87 (1993), for the proposition that such findings were required. However, the jury had already found that Wallace committed perjury, see Wallace, 461 F.3d at 22, and, in fact, the court endorsed this finding at the first sentencing. Because we are not compelled to conclude that the ruling was "unreasonable or obviously wrong" or that Wallace was prejudiced by the district court's failure to make more specific findings (if any were required), his attempt to show any injustice fails.

-17-

2. Stolen Weapons Enhancement

In the initial PSR, the Probation Office proposed a two-level enhancement under U.S.S.G. § 2K2.1(b)(4), which instructs the court: "[i]f any firearm was stolen, or had an altered or obliterated serial number, increase by two levels." Over defendant's objection, the district court applied this enhancement. However, Wallace did not challenge the enhancement on appeal, and it was reimposed at resentencing, subject only to the same summary "objection" as all of Wallace's initial objections to the PSR. At this stage in the litigation, Wallace's claim that the district court's imposition of the stolen weapons enhancement was inappropriate because "it should not apply in cases where the firearm was stolen during the course of the instant offense" is barred by the law of the case doctrine. Just as with the obstruction of justice enhancement, the district court's implicit invocation of the mandate rule was proper.

Furthermore, his attempt to invoke an exception to the doctrine fails in light of United States v. Brown, 169 F.3d 89, 93 (1st Cir. 1999). There, relying upon application note 12 to U.S.S.G. § 2K2.1, we rejected appellant's argument that the district court "double counted" the stolen nature of the firearm. Id. Here, as in Brown, Wallace's offense level was not determined under U.S.S.G. § 2K2.1(a)(7) (the catch-all provision for crimes involving the unlawful receipt or possession of firearms), which

-18-

already "takes into account that the firearm . . . was stolen." U.S.S.G. 2K2.1 cmt. n. 12.[7]  Thus, there was no double counting, and the stolen weapons enhancement was properly applied in view of application note 12, <u>Brown</u>, and the case law from other circuits.[8] Accordingly, there is no error, let alone injustice, in the imposition of this enhancement that would preclude application of the law of the case doctrine.

**C. "Reconsidering" Issues Decided in the First Appeal**

Wallace also explicitly asks us to "reconsider" our prior decision on the dangerous weapons and the disruption of government function grounds for departure.  We decline to do so.

1. Dangerous Weapons Departure

Wallace argues that his use of a dangerous weapon during the robbery was an improper basis for an upward departure because his use of that weapon, the TEC-9, was already accounted for by

---

[7] Instead, it was determined under U.S.S.G. § 2K2.1(a)(4)(B), which prescribes a base offense level of 20 if "the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30); and the defendant (i) is a prohibited person; or (ii) is convicted under 18 U.S.C. § 922(d)."  According to the PSR, Wallace was a "prohibited person" within the meaning of 18 U.S.C. § 922(g) because he was a fugitive from justice at the time of the offense (since he was a suspect in connection with the murder of his brother) and also because he admitted being an unlawful, addicted user of marijuana at the time of the offense.  <u>See</u> U.S.S.G. § 2K2.1, cmt. n. 6.

[8] <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Goff</u>, 314 F.3d 1248, 1249-50 (10th Cir. 2003); <u>United States</u> v. <u>Hurst</u>, 228 F.3d 751, 764 (6th Cir. 2000); <u>United States</u> v. <u>Shepardson</u>, 196 F.3d 306, 311-14 (2d Cir. 1999).

-19-

various other Guidelines provisions. The application of the subsequent appellate panel branch of the law of the case doctrine to this claim is straightforward. We have already held that appellant's use of a dangerous weapon was a valid basis for the upward departure, 461 F.3d at 36, and Wallace cannot meet the heavy burden required to invoke an exception under the law of the case doctrine. He cites no newly discovered evidence or intervening legal authority that requires us to reconsider, and there can be no credible claim that our failure to do so would work a "manifest injustice" in this case. As a general matter, we have long held that double-counting is "less sinister than the name implies." United States v. McCarty, 475 F.3d 39, 46 (1st Cir. 2007) (quotation marks and citation omitted). "This is because two (or more) guidelines will often rely on the same underlying facts, although accounting for different sentencing concerns." Id. (citing Wallace, 461 F.3d at 36). Wallace cannot cite any Guidelines that explicitly prohibit the "double-counting" he alleges here, and the other enhancements he cites clearly "account[] for different sentencing concerns." McCarty, 475 F.3d at 46. Therefore, this claim is barred by the law of the case doctrine.

2. Disruption of Government Function

We similarly refuse to revisit our prior affirmance of the district court's decision to depart upwardly based on

appellant's disruption of government functions.  See Wallace, 461 F.3d at 36-37.  We held that the departure was justified by Wallace's deliberate evasion of arrest, which required the government to expend significant resources in trying him separately, four years after the initial trial of his co-conspirator.  Id. at 37.  He now argues that there were insufficient factual findings in the record to support the departure because the government cannot prove that its ability to prosecute the underlying crime was "materially prejudiced" by Wallace's evasion of arrest.

Here, too, his arguments are unavailing.  Our prior opinion provided a full explanation as to why the departure was justified even on the record as it stood after the first sentencing. Id. at 36-37. On remand, the district court, in addition to citing our decision that the departure was appropriate, reiterated its own reasons for imposing the departure.  The reasonableness of this explanation precludes any argument that the application of this departure works a manifest injustice in Wallace's case.  Therefore, this claim is also barred by the law of the case doctrine.

**III.**

Appellant raises two specific challenges to the sentence imposed on remand that, unlike the claims barred by the law of the case doctrine, are appropriate for our consideration.  "We review claims of legal errors in sentencing . . . de novo," and, where a

-21-

defendant has properly preserved his objection, we review the district court's factual findings for clear error. <u>Wallace</u>, 461 F.3d at 33.

## A. **Extreme Psychological Injury**

Appellant argues that the district court improperly imposed a two-level increase for extreme psychological injury under U.S.S.G. § 5K2.3, which then provided:

> If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.
>
> Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

When this case was first before us, we held that there was insufficient evidence in the record to warrant an upward departure for extreme psychological injury. <u>Id.</u> at 39. We noted that the district court, in explaining the departure, had merely repeated portions of the trial testimony establishing that the

victims were "terrorized" during the time of the robbery, but had not pointed to any evidence of the victims's "physical or psychological symptoms or [] changes in behavior patterns," or the "extended and continuous duration" of any such injuries, as required by § 5K2.3. Id. At that time, the only evidence in the record regarding the "long-term after-effects" of the robbery was Mr. DiBiasio's trial testimony that he still "dream[s] about [the defendant's] face." We specifically noted that the "witnesses did not testify about their sustained psychological injury at trial. No medical or psychiatric records were presented. According to the PSR, no victim impact statement appears to have been submitted by any of the victims." Id. at 40.

The government addressed the deficiencies in the record on extreme psychological injury by having Mr. DiBiasio testify in some detail at the resentencing hearing. Mr. DiBiasio described the "terrifying experience" of having a heavy semi-automatic weapon with "a large capacity magazine" pointed "about five to six inches from [his] face" during the robbery for what "seemed like an eternity" while appellant shouted "[d]on't move, don't move, don't move." Immediately after the robbery, Mr. DiBiasio experienced a number of physical symptoms, such as light-headedness, dizziness, and chest-pains, and was initially unable to answer the questions posed to him by an officer on the scene.

-23-

Later, Mr. DiBiasio learned that appellant was wanted for the murder of his brother, and that he and Nickoyan were still at large. Understandably, this affected Mr. DiBiasio a great deal: "These two men, dangerous when armed, capable of murdering their own brother were on the loose. There were only two people who could identify them. I was one of them, and Donna was the other one." He was "positive" that Wallace knew that DiBiasio could identify him, because "he stared at me long enough, and I stared at him long enough." This caused him to fear for his life, as well as for the lives of his family and his employees. "Timi Wallace remained on the loose for nearly four years, four years of constant terror," he explained. "Was he behind corners? Was he hiding? Was he waiting for me?" Mr. DiBiasio stated that, as a result of the robbery, Ms. Gallinelli quit her job at the store, and he was unable to find a replacement because potential employees - as well as potential customers - were too afraid to come into the store after the robbery. As a result, business was poor and eventually the store closed. Mr. DiBiasio testified that "It affected me emotionally. I had a tough time sleeping at night. I had nightmares reliving this whole situation . . . Life at home became terrible, as was my temper. So much so that my wife and I were having constant arguments." He said that the continuing stress caused estrangement from his wife, which eventually led to divorce and also strained his relationship with his children. Mr. DiBiasio also stated that he

had a heart attack in September 2001, while appellant was still at large, and that he attributed this to the stress of the robbery's aftermath. He told the court that "As I lay in that hospital, I wish that I had died."

Mr. DiBiasio also reported that the robbery also had lasting effects on Gallinelli, who was in a "terrible condition" following the robbery. He stated that because of the constant terror caused by appellant's fugitive status, she moved out of her house because "her address or approximate location had been in the paper." She also quit her job at Mr. DiBiasio's store.

Wallace, who timely objected to the imposition of this departure below, now contends that the additional evidence provided at the second sentencing through the testimony of Mr. DiBiasio was an insufficient basis for the departure. He argues that Mr. DiBiasio did not produce evidence - for example, medical or psychiatric records - that would establish that he suffered psychological injuries more serious than those that would normally follow the commission of an armed robbery, that he changed his behavior in any significant way, or that his functioning was substantially impaired. He also asserts, citing authorities from other circuits, that Mr. DiBiasio's testimony regarding the effect of the robbery on his family members is irrelevant because they were not present during the robbery.

Appellant correctly points out that we have, in the past, remarked on the <u>absence</u> of sufficient evidence in the record - including the absence of medical records - to support the departure. <u>See</u>, <u>e.g.</u>, <u>Wallace</u>, 461 F.3d at 40; <u>United States</u> v. <u>Pelkey</u>, 29 F.3d 11, 16 (1st Cir. 1994). However, our discussion in those earlier cases focused on the absence of evidence of <u>any kind</u> that would support the imposition of the departure; we have never stated that, in the face of other credible evidence, the absence of medical documentation is dispositive and precludes the departure. Other circuits have similarly rejected any such requirement. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Morrison</u>, 153 F.3d 34, 54-55 (2d Cir. 1998) ("A sentencing court does not need to hear the testimony of psychologists or psychiatrists to impose an upward departure based on psychological injury."); <u>United States</u> v. <u>Anderson</u>, 5 F.3d 795, 805 (5th Cir. 1993) (imposing departure on the basis of a victim impact statement alone and distinguishing cases refusing to impose the departure based on lack of medical records by noting the absence in those cases of any other credible evidence of extreme psychological injury); <u>see</u> <u>also</u> <u>United States</u> v. <u>Bowker</u>, 372 F.3d 365, 390-92 (6th Cir. 2004), <u>vacated on other grounds</u>, 543 U.S. 1182 (2005); <u>United States</u> v. <u>Sawyer</u>, 180 F.3d 1319, 1324 (11th Cir. 1999); <u>United States</u> v. <u>Miller</u>, 993 F.2d 16, 21 (2d Cir. 1993).

In this case, there was ample evidence to support the departure without medical records. After hearing Mr. DiBiasio's

-26-

testimony at resentencing, the district court noted: "This is an example of how a violent crime can have an effect that rolls like the ripples of a rock hitting a pond out from the center and touches so many different people beyond the people who are directly involved." The court noted that, aside from the "terrorizing nature of the crime," the fact that Mr. DiBiasio (and Ms. Gallinelli) could identify the defendant, who they later learned had been accused of murdering his own brother, led to "four years of non-stop worry and fear" while Wallace was on the run. This was sufficient to show that the effects had been "of an extended or continuous duration." The court cited the evidence that Mr. DiBiasio's functioning had been impaired: "his whole attitude changed. He became more irritable. He became argumentative and that, in turn, led to, essentially, separation from his wife and estrangement from his children." Finally, the court pointed to changes in the victims' behavior - noting that even beyond Mr. DiBiasio's powerful testimony as to his own condition, he had recounted that Ms. Gallinelli was "a basket case" who quit her job and had to move for fear that she

would be found by the appellant.[9]  There was no error in the court's decision to impose the departure for extreme psychological injuries.

## B.  Criminal History Category

Under U.S.S.G. § 4A1.3(a)(1) (2005)[10], "[i]f reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted."  The Guidelines specifically note several types of information that may support this departure, including "[w]hether the defendant was pending trial or sentencing on another charge at the time of the instant offense."  U.S.S.G. § 4A1.3(a)(2)(D).  If the sentencing court determines that the departure is appropriate, the court "shall determine the extent of [the] departure . . . by using, as a reference, the criminal

---

[9] At oral argument, appellant's counsel insisted that the district court inappropriately considered the destruction of Mr. DiBiasio's business itself as part of the psychological injury resulting from the crime.  This claim is inaccurate.  Indeed, the court explicitly noted that "I don't think I can consider the destruction of the business, although I do think I can consider the impact that that has on one's psyche.  You build a business over a lifetime and it's the culmination of your life's work, and to see that destroyed cannot help but have an impact on the victim."

[10] With respect to this departure only, the government cites the 2005 edition of the Guidelines because (1) this court seems to have used this edition in the prior appeal, see 461 F.3d at 41-42; (2) the government relied on this edition at the resentencing, without objection, and (3) none of the post-1998 changes in language or numbering would affect the outcome.  We agree and, for the purposes of this departure only, will also refer to the 2005 Manual.

history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." U.S.S.G. § 4A1.3(a)(4)(A).

In the first appeal, we held that the district court's adoption of a two-level horizontal departure without an adequate justification for the substantial increase was clear error. We noted first that the commission of the robbery at a time when - as we assumed - Wallace knew that he was under indictment for another serious crime may "arguably [be] indicative of his likelihood to commit other crimes." Wallace, 461 F.3d at 41 (quotation marks and citation omitted). We compared this situation to "the example listed in the guidelines of committing an 'offense while on bail or pretrial release for another serious offense,'" id. at 42 (quoting U.S.S.G. § 4A1.3(2)(D)), because "[i]n both scenarios, no adjudication of guilt has occurred, but the defendant's commission of a crime during a period in which one would expect a careful abidance to the law arguably demonstrates his or her propensity for criminal behavior, at least for the purposes of sentencing." Id. However, we also acknowledged that the imposition of a two-level departure "essentially added 4-6 points to Wallace's criminal history points." If he had committed the robbery while under any criminal justice sentence,[11] only two points would have been added

_____

[11] Defined by the Guidelines as "probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A.1.1(d).

-29-

to his criminal history classification under U.S.S.G. § 4A.1.1(d).  Id.  "Without any explanation of why the court chose a departure of this extent," we could not conclude that it was justified.  Id. at 42.  We also commented that, on remand, the required explanation might include "at least an indication of why a one category increase is inadequate in this case."  Id. at 43 (internal quotation marks and citation omitted).

At resentencing, the district court determined that, while an upward departure on the basis of underrepresented criminal history was warranted, a one-level increase would suffice.  Wallace now argues that this increase was an error because at the time he committed the robbery, the Massachusetts criminal proceeding was at the complaint stage and had not yet resulted in an indictment.  He claims that this fact renders the charges insufficient to warrant an upward departure.

Wallace is correct that, in all of the previous proceedings, including his first appeal and the resentencing, the Massachusetts criminal complaint was mistakenly referred to as an "indictment."  In reality, although appellant was ultimately indicted for murder by a Suffolk County Superior Court Grand Jury, this indictment did not occur until after the robbery.  Nevertheless, the logic set forth in our first decision, endorsed by the district court, still applies.

At resentencing, the district court found that certain evidence introduced at trial, including evidence of appellant's flight and use of aliases, indicated that he was well aware of the state criminal proceedings at the time of the robbery. That was true regardless of whether those proceedings were at the complaint or the indictment stage. The court specifically noted our earlier conclusion that Wallace would be "hard-pressed" to deny the connection between the murder charge and his evasive activities, see id. at 42, after he himself proposed such a link in the course of making other arguments in his first appeal.[12] The sentencing court endorsed our prior logic that the timing of the commission of the robbery at a time when "one would expect a careful abidance to the law . . . demonstrated his propensity for criminal behavior." Finally, the court explained that it had chosen a one-level departure based on our analogy to U.S.S.G. § 4.A1.1(d) concerning the commission of a robbery while on supervised release. There was no abuse of discretion in this choice.[13]

---

[12] In the first appeal, in a challenge to certain remarks made by the prosecution in closing, Wallace argued that his flight and the use of aliases might have reflected his attempt to evade the murder charge, rather than flight based on the robbery charges. See Wallace, 461 F.3d at 42.

[13] Appellant also advances an additional argument, for the first time on appeal, that the criminal history departure represented impermissible double-counting because the multiple weapons enhancement he received for Count III was premised in part on the fact that he possessed the firearms as a "prohibited person" - a designation that was based on findings that he was "a fugitive from justice" and "an unlawful user of or addicted to any

Finally, appellant challenges the substantive reasonableness of his sentence on two grounds. First, he argues that there was a significant disparity between his sentence and his co-conspirator's sentence and, therefore, the sentencing court did not properly heed 18 U.S.C. § 3553(a)'s instruction that it consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been convicted of similar conduct." He notes that Nickoyan Wallace was sentenced to a term of imprisonment 90 months shorter than appellant's, despite having been convicted of the same crimes. Appellant also attacks his sentence on the ground that the government "drastically changed its position" between the first sentencing (at which it recommended a sentence of 184 months, which was within the advisory Guidelines range) and resentencing (where it moved for upward departures and recommended a term of 294 months).

We review a defendant's challenge to the substantive reasonableness of his sentence for abuse of discretion. United States v. Cruz-Rodríguez, 541 F.3d 19, 32 (1st Cir. 2008). We afford the district court "wide discretion" in sentencing decisions.

---

controlled substance." He now contends that his designation as a "fugitive from justice" makes the imposition of the criminal history departure redundant. Arguments raised for the first time on appeal are considered waived. See United States v. Hernández-Rodríguez, 443 F.3d 138, 143 n.5 (1st Cir. 2006). We therefore refuse to consider them.

<u>United States</u> v. <u>Marceau</u>, 554 F.3d 24, 33 (1st Cir. 2009). Ultimately, "the linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." <u>United States</u> v. <u>Martin</u>, 520 F.3d 87, 96 (1st Cir. 2008).

18 U.S.C. § 3553(a)(6) requires judges to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Although this section is "primarily aimed at national disparities, rather than those between co-defendants . . . , a district court may consider differences and similarities between co-defendants at sentencing." <u>Marceau</u>, 554 F.3d at 33. However, a "defendant is not entitled to a lighter sentence merely because his co-defendants received lighter sentences." <u>Id.</u> (quotation marks omitted). Still, "concerns could arise if two identically situated defendants received different sentences from the same judge." <u>Id.</u> (quotation marks and citation omitted).

Here, it was <u>not</u> the same judge who sentenced Timi and Nickoyan Wallace in this case, a fact that makes Nickoyan's sentence even less relevant to the reasonableness analysis. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Saez</u>, 444 F.3d 15, 19 (1st Cir. 2006). More importantly, "the district court confronted the disparity head-on," <u>Marceau</u>, 554 F.3d at 34, and explicitly described the reasons that appellant and Nickoyan Wallace were not "identically situated." It focused on a number of aggravating factors that were present only

-33-

in appellant's case.  Specifically, the court pointed to the departures for the use of a dangerous weapon, obstruction of government function, and extreme psychological injury, none of which were applied to Nickoyan.[14]  Appellant's extended flight from authorities differentiated his case from Nickoyan's.  The government had to expend additional resources by holding two separate trials four years apart.  Also, Mr. DiBiasio and Ms. Gallinelli had to live in constant fear while appellant was at large.  The district court's detailed justification for the disparity in sentencing complies easily with the reasonableness standard.

Appellant's attempt to use the government's change of strategy at resentencing to assail his sentence must also fail.  He cites no authority for the proposition that the government's changed approach to a sentencing proceeding on remand should affect the reasonableness analysis in any way.  We reject the relevance of that change to the reasonableness analysis.[15]

**Affirmed.**

---

[14] The court also noted that the criminal history departure raised appellant's criminal history category to the same as his brother's, and, while Nickoyan's might have been raised even further, that motion had not been made in his case.

[15] Appellant also makes several perfunctory constitutional claims.  He argues 1) that the sentencing disparity violates the Constitution and 2) that the change in the government's recommendation between the first and second sentencing proceedings represents a violation of his rights on the basis of prosecutorial vindictiveness.  These perfunctory arguments are both waived, United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and meritless.

-34-