# United States Court of Appeals

## For the First Circuit

No. 08-1765

ANDRES PERALTA,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Saylor,[*] District Judge.

B. Alan Seidler, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Paula D. Silsby, United States Attorney was on brief for appellee.

March 5, 2010

---

[*]Of the District of Massachusetts, sitting by designation.

**Per Curiam**. This is an appeal by a federal prisoner from the denial of a motion to vacate his sentence under 28 U.S.C. § 2255. Appellant Andres Peralta pleaded guilty to a drug conspiracy count in 2004 and was sentenced to 135 months' imprisonment. He now contends that he received ineffective assistance of counsel in violation of the Sixth Amendment and, as a result, was wrongly classified as a career criminal and sentenced to an unreasonably long term of imprisonment. Because we find that Peralta has not met his burden of proving a constitutional violation, we affirm.

I.      **Background**

    A.      **Indictment and Motion to Dismiss**

On August 6, 1996, Andres Peralta was charged in the United States District Court for the District of Maine in a one-count indictment. The indictment charged Peralta and three others with conspiring to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). The conspiracy was alleged to have occurred between early 1992 and February 1996.

Peralta remained at large for nearly eight years. He was ultimately arrested on May 12, 2004, in New York. On July 8, 2004, attorney Frank Ortiz entered an appearance as his counsel.

Ortiz was a graduate of Harvard Law School and a member of the New York bar who had practiced law since 1959. Ortiz was fluent in Spanish; because Peralta is a native of the Dominican

Republic whose English is limited, Ortiz communicated with him in Spanish.

Peralta entered a plea of not guilty. On August 26, 2004, Ortiz filed a motion to dismiss the indictment, alleging a violation of Peralta's constitutional right to a speedy trial. As the Magistrate Judge later characterized the motion, it was "substantial" and "well-researched." Because Peralta ultimately pleaded guilty pursuant to a plea agreement, the government never filed an opposition, and the District Court never resolved the issue.

In addition to filing the motion, Ortiz entered into plea negotiations with the government. On September 16, 2004, Ortiz sent Peralta a copy of a proposed plea agreement with significant parts of it translated into Spanish. Ortiz believed at the time, and advised Peralta, that under the proposed agreement the guideline sentencing range would be 188 to 235 months. Ortiz also visited Peralta in Maine to discuss the plea agreement before he signed it.[1]

---

[1]Whether Ortiz discussed the agreement with Peralta in person is a matter of some dispute. Peralta testified at the hearing before the Magistrate Judge that all communications with Ortiz concerning the plea agreement were made through the mail. However, Ortiz's September 16 letter refers to an upcoming visit on September 21. Both Peralta and Ortiz signed and dated the agreement September 21, 2004. Peralta also initialed each page of the plea agreement, despite not having been requested to do so in any of the correspondence between himself and Ortiz. The Magistrate Judge thus concluded that Ortiz did in fact visit Peralta on September 21, 2004, to discuss the plea agreement and

Peralta executed the written plea agreement on September 21, 2004, and on October 1, 2004, it was filed with the court.

**B.  Plea Agreement**

The plea agreement included a stipulation to a drug quantity of 500 grams to two kilograms of cocaine, which resulted in a base offense level of 26 under the Sentencing Guidelines.  The agreement also provided that the government would move for a three-level downward departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1; that the government would not file an information under 21 U.S.C. § 851 in order to obtain an enhanced sentence; and that Peralta would not waive his rights under the then-recent Blakely decision.[2]

At some point after Peralta signed the plea agreement, but before the change of plea took place, Ortiz came to realize for the first time that Peralta's criminal record might result in a "career offender" classification under the Sentencing Guidelines. See U.S.S.G. § 4B1.1.  As a career offender, Peralta would be subject to a substantially longer guideline sentence.  On October 15, 2004, Ortiz wrote a letter to Peralta explaining that he had postponed the change of plea hearing because of this late

that Peralta signed it on that date.

[2] See Blakely v. Washington, 542 U.S. 296 (2004).  By the time of the sentencing hearing, on May 16, 2005, the Supreme Court had decided United States v. Booker, 543 U.S. 220 (2005), and the sentencing guidelines were thus treated as advisory.

-4-

realization. The letter stated that although the plea agreement had been signed, Peralta had not yet entered a plea of guilty, and it was therefore likely that he could proceed on the motion to dismiss without any "harm" to his rights. Ortiz further explained--apparently for the first time--that Peralta could be facing a sentence of 262 to 327 months as a career offender.

Ortiz attempted to negotiate a further reduction in the agreed-upon drug quantity, but was unsuccessful. Peralta did, however, cooperate with the government sufficiently to earn an additional concession; the government agreed that if he were found to be a career offender, it would not oppose his motion for a downward departure based upon the fact that his criminal history category overstated his criminal history. That agreement was memorialized in a letter from the Assistant U.S. Attorney dated November 8, 2004.

Peralta pleaded guilty on November 10, 2004, to the single conspiracy count. The court accepted the guilty plea as voluntary and knowing. The same day, the court entered an order terminating the motion to dismiss.

### C. Developments Between the Guilty Plea and the Sentencing

During the period that Peralta was awaiting his sentencing hearing, he exchanged three letters with Ortiz.

On February 7, 2005, Peralta sent a letter alleging that Ortiz had promised him a sentence of 60 months based upon his

"deal" with the Government. On March 2, 2005, Ortiz responded; he unequivocally denied that he had ever made such a promise and told Peralta that if he intended to make such an accusation, he should tell the judge immediately that he had been misled and wanted a new attorney. Ortiz offered to withdraw from representation. On March 9, 2005, Peralta wrote a letter of apology explaining that he was depressed and apparently not thinking clearly when he wrote the earlier letter.

The Presentence Report attributed 7.8 kilograms of cocaine to Peralta, and accordingly calculated a base offense level of 32 under U.S.S.G. § 2D1.1.[3]  A two-level role enhancement and three-level reduction under U.S.S.G. § 3E1.1 produced an adjusted offense level of 31.  Peralta had two prior drug-trafficking convictions, which qualified him as a career offender under § 4B1.1; this resulted in a revised base offense level of 34.  With a reduction for acceptance of responsibility, the total offense level became 31.

The PSR calculated Peralta's criminal history score as eight.  Although he would otherwise have been placed in criminal history category IV, his career-offender status placed him in criminal history category VI.  The resulting guideline range was

---

[3] All references are to the 1995 edition of the Guidelines.

188 to 235 months.  A mandatory minimum sentence of five years also applied.[4]

One of the predicate convictions under the career offender guideline was a 1988 conviction in New York for attempted sale of a controlled substance.  On March 22, 1988, Peralta had been sentenced to a five-year probationary sentence on that offense; the probation was terminated early in April 1990.  The 1988 conviction was a "youthful offender adjudication" under New York law.  See N.Y. Crim. Proc. Law § 720.10.  The PSR stated that Peralta was 18 years old at the time he committed the offense on January 28, 1988.

The PSR listed Peralta's birth date as October 1, 1969, in two separate locations.  It also listed his then-current age as 35 years, which implied a birth date between February 1969 and February 1970.  Peralta raised no objection as to his date of birth or his age.

D.    **Sentencing**

On May 15, 2005, Peralta appeared with his attorney for sentencing.  Ortiz and Peralta confirmed separately that they had read and discussed the PSR.

---

[4] The PSR stated that Peralta's criminal history category might over-represent his prior record because, although he had three felony convictions and qualified as a career offender, he had served only a total of six months in custody.

The government argued that Peralta qualified as a career offender because the 1988 conviction counted as a predicate. It specifically argued that Peralta "was 18 when he was convicted. It does not even qualify as a juvenile conviction under the guidelines. In addition, juvenile convictions can be counted as predicates."[5]

The court found that "it is clear that the defendant was 18 or older at the time of the offense." It accordingly counted the 1988 conviction as a predicate, which rendered Peralta a career offender. The court, however, granted Peralta a two-level downward departure as to his criminal history category (to Category IV) and a 16-month downward departure under § 5K1.1 for his cooperation. It then sentenced him to a term of incarceration of 135 months.

### E. Appeal

This Court affirmed the sentence, holding that "the sentencing judge sentenced Peralta to a reasonable prison term." United States v. Peralta, 457 F.3d 169, 172 (1st Cir. 2006)(per curiam).

### F. The § 2255 Proceeding

On March 15, 2007, Peralta filed a pro se motion under 28 U.S.C. § 2255 to set aside his conviction on the grounds, among

---

[5] The government also argued that "even under New York law, the state of New York permits consideration of a youthful offender conviction under certain circumstances. . . . a conviction occurs before the defendant receives the youthful offender status."

other things, that he received ineffective assistance of counsel in connection with his plea of guilty, sentencing, and direct appeal.[6]

With his motion, Peralta filed a transcript of the plea proceeding in New York on February 11, 1988. According to the transcript, Peralta's attorney had told the judge that Peralta was then 17 years old. Peralta also attached a copy of what he represented was a certified copy of a birth certificate from the Dominican Republic showing his date of birth as October 1, 1970.

The matter was referred to a Magistrate Judge for a report and recommendation.[7] After an evidentiary hearing in April 2008, the Magistrate Judge made various factual findings and recommended that the District Judge deny the motion. On May 22, 2008, the District Judge adopted the report and recommendations of the Magistrate Judge.

Peralta now appeals that decision.

## II.      Standard of Review

Because the district court held an evidentiary hearing on the ineffective assistance of counsel claim, this Court will

---

[6] The motion raised three grounds: (1) trial counsel was ineffective by withdrawing a motion to dismiss the indictment "counting on an alleged promised sentence as a 'quid pro quo' agreement"; (2) appellate counsel was ineffective by withdrawing a pro se submission filed by Peralta under Fed. R App. P. 28(j) to present newly-acquired evidence of Peralta's birth date; and (3) the government breached the plea agreement by offering Peralta a sentence of five years and then "declar[ing] him as a 'career criminal.'"

[7] Counsel was appointed for Peralta prior to the hearing.

"review[] its factual conclusions for clear error." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007)(citing Awon v. United States, 308 F.3d 133, 140 (1st Cir. 2002)). See also Strickland v. Washington, 466 U.S. 668, 698 (1984). The district court's legal conclusions will be reviewed de novo. Owens, 483 F.3d at 57.

## III.   The Claim of Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, Peralta must show both deficient performance by counsel and resulting prejudice. Strickland, 466 U.S. at 687. The Constitution guarantees only an "effective defense, not necessarily a perfect defense or a successful defense." Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994).

In order to satisfy the "deficient performance" prong, Peralta must show that his trial counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. This Court's review of counsel's performance must be deferential, and reasonableness must be considered in light of "prevailing professional norms." Id.

In order to satisfy the "prejudice" prong, Peralta must establish that "but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence." Porter v. McCollum, 130 S. Ct. 447, 453 (2009) (per curiam); see Strickland, 466 U.S. at 694; Hill v. Lockhardt, 474

-10-

U.S. 52, 59 (1985).  Although he need not show "that counsel's deficient conduct more likely than not altered the outcome" of his sentencing proceeding, he must establish "a probability sufficient to undermine confidence in [that] outcome."  Porter, 130 S. Ct. at 455-56, quoting Strickland, 466 U.S. at 693-94.

### A.    Counsel's Withdrawal of Motion to Dismiss

At the time Peralta entered into the plea agreement, a motion to dismiss the indictment on speedy-trial grounds was pending before the court.  Peralta contends that his counsel was constitutionally ineffective because he failed to prosecute the motion to dismiss, and instead advised him to plead guilty.  That claim fails both prongs of the Strickland test.

### 1.    Objectively Reasonable Performance by Counsel

The first question is whether it was objectively unreasonable for Ortiz to advise Peralta to accept the plea agreement and withdraw the motion to dismiss.

The Magistrate Judge concluded that "[Ortiz] informed Peralta that the motion had some merit and it would certainly give them some leverage during plea negotiations," but that he could "never guarantee that the motion would ultimately be granted." According to Ortiz's testimony, Peralta expressed concern as to whether the motion would be granted and preferred to withdraw it

-11-

and enter into a plea agreement rather than risking the possibility of losing the motion on the merits.[8]

While the motion was pending, Ortiz negotiated a plea agreement that provided substantial benefits to Peralta. The original plea agreement included a stipulated drug amount that resulted in a base offense level of 26 (the PSR recommended 32); an agreement for a government motion for a three-level adjustment for acceptance of responsibility, notwithstanding evidence that Peralta knew he was under indictment and remained a fugitive for nearly eight years; and an agreement not to file an information under § 851 seeking an enhanced sentence. As supplemented by the November 8 letter, it also included agreement not to oppose defendant's motion for a downward departure based on his criminal history category. The district court in fact departed downward, and imposed a sentence (135 months) that was nearly one-half of the low end of the guideline range (262 months) that might otherwise have applied.

The decision to accept the plea agreement, rather than pursue the motion to dismiss, was a strategic choice. Neither option--pleading guilty or pursuing the motion--was obviously

---

[8] According to Ortiz, Peralta was convinced that, because he was of Dominican origin and being tried in Maine, the charges against him would never be dismissed. Ortiz explained that the motion would rise or fall on its own merits, regardless of Peralta's ethnic background, but that he could not guarantee success on the motion. This fear of racial prejudice, Ortiz contends, was the basis for Peralta's decision.

correct or incorrect. The Magistrate Judge concluded that "Ortiz informed Peralta of the risks, explained a range of options to Peralta, and allowed Peralta to make the final decision about whether to proceed with the motion to dismiss or to plead guilty under the terms of the plea agreement." (Rept. and Rec. at 21).[9] Peralta was aware at the time he made that decision that he was potentially subject to sentencing as a career offender. Under the circumstances, Ortiz's performance as counsel was not objectively unreasonable, and Peralta therefore cannot satisfy the first prong of the Strickland test.

## 2. Resulting Prejudice

In any event, Peralta has not established a probability that he suffered prejudice as a result of Ortiz's advice sufficient to undermine confidence in the outcome of the sentencing. Peralta does not now contend that the motion to dismiss, had it not been withdrawn, would have succeeded, or even that it was likely to succeed. Instead, he has only speculated that he was prejudiced by the motion's withdrawal. And, as described above, he certainly received benefits as a result of the plea agreement. Peralta therefore cannot satisfy the second prong of the Strickland test.

---

[9] During the sentencing hearing, Ortiz told the court that it was Peralta's desire to withdraw the motion and instead plead guilty. Peralta was present at the time that statement was made and did not indicate that he disagreed.

**B.** **Age at the Time of His 1988 Conviction**

Peralta next contends that he received constitutionally ineffective assistance because counsel did not argue that he was 17 at the time of his 1988 New York conviction. Had his counsel made such an argument, he argues, the 1988 conviction would not have been used as a predicate to calculate his career offender status and his sentence would have been significantly less severe as a result. That argument again fails both prongs of the Strickland test.

**1.** **Objectively Reasonable Performance by Counsel**

The first question is whether it was objectively unreasonable for Ortiz not to conduct further research as to the issue of Peralta's age. From Ortiz's perspective, as of the relevant time, the evidence as to Peralta's age was the following:

First, Peralta and his wife had provided Ortiz with a marriage certificate and birth certificates for their children, all of which indicated that he was born in 1969. Peralta did not tell Ortiz that those dates were erroneous.

Second, an affidavit by the arresting Deputy U.S. Marshal indicated that the government believed that Peralta was born on either October 1 or 2, 1969. The affidavit also noted that Peralta was carrying a driver's license that listed his birth year as 1969.

Third, the PSR stated that Peralta was 18 at the time of the 1988 conviction, and listed his birth date as October 1, 1969,

in two different locations.  Peralta did not tell Ortiz that those statements were erroneous.

The only evidence to suggest that Peralta ever told Ortiz that he was actually born in 1970, and not 1969, is his own unsubstantiated claim that he did so--an issue that he raised for the first time on appeal.  The Magistrate Judge found as a factual matter that Peralta never gave his attorney any reason to believe that he was 17 at the time of the 1988 conviction.

Peralta has since produced other contradictory evidence, in the form of a birth certificate from the Dominican Republic and the transcript of the 1988 New York proceedings.  The issue is not, however, whether that evidence reliably establishes that he was born in 1970.  Rather, it is whether a reasonable attorney under the circumstances would have searched for that evidence.  The mere existence of the evidence does not prove, by hindsight, that Ortiz should have looked for it or found it.

Under the circumstances, we do not find that Ortiz's performance was deficient.  It was not unreasonable for Ortiz to presume that Peralta was an adult at the time of his 1988 conviction, and that the conviction would therefore serve as a predicate for career offender status.  Trial counsel inevitably must decide where to focus his or her efforts; not every fact can be double-checked.  In the apparent absence of evidence suggesting an earlier birth date, it was not unreasonable for Ortiz to shift

his efforts toward conducting plea negotiations that were more likely to provide a greater benefit to his client than further research into his birth date.

We find no error in the District Court's finding that Ortiz acted within a reasonable professional standard of care. Peralta has therefore failed to establish "deficient performance" under the first prong of <u>Strickland</u>.

### 2.  **Resulting Prejudice**

Even if the evidence had shown that Peralta was born in 1970, it is likely that the conviction would have nonetheless qualified as a career offender predicate.  Peralta thus cannot show prejudice sufficient to satisfy the second prong of <u>Strickland</u>.

Under the Sentencing Guidelines, a conviction qualifies as a career offender predicate--even if the defendant was a juvenile at the time he committed the offense--if the defendant "was released from . . . confinement" or the "sentence [was] imposed" within five years of the defendant's "commencement of the instant offense."   U.S.S.G. § 4A1.2(d)(2); <u>see also</u> 4B1.2, comment.(n.3).  Here, the relevant sentence was imposed on March 22, 1988.  The indictment for the present offense--to which Peralta pleaded guilty--alleged that Peralta joined the conspiracy in early 1992.[10]  Moreover, the PSR indicated that LaChance was obtaining

---

[10] During the Rule 11 colloquy at the change of plea, Ortiz stated that, from defendant's perspective, the only "deviation, if any" from the prosecution version of the offense was that Peralta

-16-

drugs from Peralta in New York as early as 1991.[11]  Peralta submitted no contrary evidence.  The present offense was therefore commenced within five years after his 1988 sentencing. Thus, even if Ortiz had been successful in establishing that Peralta was 17 at the time of the 1988 conviction, it is likely that he would have nonetheless been found to be a career offender.

We further note that even if all the evidence concerning Peralta's birth date had been presented to the sentencing court, it is doubtful whether there is a reasonable probability of a different outcome as to the court's finding that he was born in 1969.  There was documentary evidence supporting both potential dates, and while Peralta now claims he was born in 1970, he failed to object on multiple occasions to contrary statements.  Peralta's lawyer's statements during his 1988 plea proceeding were, at best, second-hand evidence of dubious reliability.  As the Magistrate Judge concluded, his true birth date appears to have been "lost in the mists of time" (Rept. and Rec. at 2).

_____

did not "recollect joining the conspiracy in 1992, but in 1993."

[11] The PSR stated that in December 1995, the Maine Drug Enforcement Agency received information that Rick LaChance, Albin Lavallee, and Albert Letourneau were involved in cocaine trafficking.  An undercover agent made several purchases of cocaine from Lavallee, who was then arrested.  Lavallee cooperated and told agents that LaChance had been selling cocaine since 1991, and that LaChance had traveled to New York to purchase the drugs from David Gell and "Luis" Peralta, who turned out to be the defendant. Peralta, however, told the probation officer during the presentence investigation that "in his recollection he became involved in the conspiracy during 1993."

Peralta accordingly has failed to present evidence of prejudice sufficient to undermine confidence in the outcome of his sentencing proceeding, and thus has failed to satisfy the second prong of Strickland.

**IV.      Other Issues Outside the Certificate of Appealability**

This appeal has been unnecessarily complicated by counsel's failure to adhere to the issues set forth in the Certificate of Appealability ("COA") issued by the District Court. By statute, a COA is required for an appeal from a final disposition of a § 2255 petition. See 18 U.S.C. § 2253(c); Fed. R. App. P. 22(b); United States v. Barrett, 178 F.3d 34, 41 (1st Cir. 1999). Peralta moved below for a COA as to two issues, identifying them on page 5 of his motion as follows:

> 1. Did the Report and Recommendation Decision of the Magistrate Judge, as adopted by the District Court, holding that the conduct of trial counsel (in failing to prosecute a viable Motion to Dismiss the Indictment on Speedy Trial grounds (eight year delay) and to investigate Petitioner-Appellant's criminal history before having him enter into a binding plea agreement with the government) did not fall measurably below that which might be expected from an ordinary fallible attorney, constitute an unreasonable application of clearly-established Federal law?; and

> 2. Was the Report and Recommendation Decision of the Magistrate Judge, as adopted by the District Court, based upon an unreasonable determination of the facts in light of the evidence presented at the evidentiary hearing?

The District Court granted the motion by electronic order "as to the two issues set forth in the motion, page 5."

Peralta has raised a variety of issues outside the scope of the COA. Specifically, he contends (1) that he was denied effective assistance of counsel because Ortiz failed to properly advise him concerning "the Criminal History calculus" (Appt. Br. at 9); (2) that he was denied effective assistance of counsel because Ortiz allegedly informed him that the prosecutor's office had promised a sentence of five years (Appt. Br. at 12); (3) that his sentence of 135 months' incarceration was unreasonable (Appt. Br. at 16); and (4) that his counsel for his direct appeal provided ineffective assistance (Appt. Br. at 22).

Although the issues in the COA are framed somewhat awkwardly and inaccurately, the Court has read it broadly to permit an appeal as to (1) the claim of ineffective assistance of counsel concerning (a) counsel's alleged failure to prosecute the motion to dismiss and (b) counsel's alleged failure to investigate his criminal history (including the question of his age at the time of his 1988 conviction) and (2) the related findings of fact made by the Magistrate Judge.

To the extent his brief raises other issues, they are outside the scope of the COA. The general rule is that "a court of appeals should not consider the merits of an issue advanced by a habeas petitioner unless a COA first has been obtained with respect to that issue." Bui v. DiPaolo, 170 F.3d 232, 237 (1st Cir. 1999) (emphasis in original). Where the district court denies a request

-19-

for a COA as to a particular issue, the proper procedure is to seek a complementary COA with the court of appeals.  <u>Id.</u>  This is not, however, a case where the district court granted a request for a COA as to some issues but not as to others.  <u>Cf.</u> <u>id.</u>  Instead, Peralta has simply raised new issues in his appellate brief that he never addressed in his request for a COA.  Having failed to request a COA as to those issues in either the district court or the court of appeals, Peralta has waived his right to appellate review of those issues.[12]

## V.        Conclusion

The district court committed no error in finding that petitioner was not denied constitutionally effective assistance of counsel.  Accordingly, we affirm the denial of his § 2255 motion. **Affirmed**.

---

[12] To the extent Peralta claims his sentence was unreasonable, the "subsequent appellate panel" branch of the law of the case doctrine also applies.  <u>See</u> <u>United States</u> v. <u>Wallace</u>, 2009 WL 2184670, **5, 8 (1st Cir. July 23, 2009).  This Court has already held "that the sentencing judge sentenced Peralta to a reasonable prison term, that no legal error underlay the court's reference to the co-conspirator's sentence, and that the court employed a mode of analysis which was entirely consistent with that later prescribed" in <u>United States v. Jiminez-Beltre</u>, 440 F.3d 514 (1st Cir. 2006)(en banc).  <u>Peralta I</u>, 457 F.3d at 172.  Peralta has not met the heavy burden required to invoke an exception to that doctrine.  <u>Wallace</u>, 2009 WL 2184670 at *8.