# United States Court of Appeals
## For the First Circuit

No. 13-1980

UNITED STATES OF AMERICA,

Appellee,

v.

MAURO EDULIO JIMÉNEZ-BANEGAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Lynch, Torruella, and Barron,
Circuit Judges.

Sharon Fray-Witzer, on brief for appellant.
Renée M. Bunker, Assistant United States Attorney, and
Thomas E. Delahanty II, United States Attorney, on brief for
appellee.

June 24, 2015

**TORRUELLA, Circuit Judge**. Defendant, Mauro Edulio Jiménez-Banegas ("Jiménez"), pleaded guilty to illegal reentry into the United States pursuant to 8 U.S.C. § 1326. At sentencing, the district court determined that the applicable statutory maximum imprisonment sentence was twenty years under 8 U.S.C. § 1326(b)(2) because Jiménez had illegally reentered the United States subsequent to deportation after a conviction for an aggravated felony. The district court also enhanced Jiménez's Guidelines sentencing range ("GSR") pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) upon determining that Jiménez had been previously deported or unlawfully remained in the United States after a conviction for a felony that is a crime of violence. Ultimately, the court sentenced him to fifty-seven months of imprisonment. Jiménez challenges his sentence, arguing that the fact of his prior conviction for an aggravated felony had to be alleged in the indictment and proven beyond a reasonable doubt in order for him to be sentenced to a term greater than the two-year statutory maximum established in 8 U.S.C. § 1326(a). Finding that Jiménez's argument is foreclosed by binding Supreme Court precedent, we affirm his sentence.

## I. Facts

Because Jiménez pleaded guilty, our discussion of the facts is drawn from the change-of-plea colloquy, the Presentence Investigation Report ("PSR"), and the transcript of the sentencing

-2-

hearing.  See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).

This case is the result of Jiménez's -- a Honduran citizen -- repeated attempts to illegally enter and remain in this country, in violation of our immigration laws.  He was first found to have illegally entered the United States in 1989, and was deported.  Determined to live here, Jiménez illegally reentered the United States.

During his illegal stays in the United States, Jiménez also had brushes with the law in areas other than immigration.  As a result, he was arrested in 2003 and, in 2004, he pleaded guilty to unlawful entry into a woman's house and attempted third degree sexual abuse in the Washington D.C., Superior Court.  Case No. F-01729-03.  He was sentenced to ninety days incarceration for the unlawful entry and eighteen months incarceration for attempted third degree sexual abuse.[1]  Upon his release from custody in September 2004, Jiménez was again deported to Honduras.

In January 2005, Jiménez was again found in the United States and was arrested.  He pleaded guilty to illegal reentry subsequent to an aggravated felony conviction -- the attempted

---

[1]  In 2004, while Jiménez was in custody in relation to Case No. F-01729-03, the United States Immigration and Customs Enforcement learned that Jiménez had illegally reentered the United States. For this offense, he was convicted and sentenced to time served, to be served concurrently to the sentence imposed in Case No. F-01729-03, followed by one year of supervised release and deportation.

third degree sexual abuse -- in violation of 8 U.S.C. § 1326.  The district court applied a sixteen-level enhancement to his base offense level, pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), based on his prior conviction for a crime of violence -- the attempted third degree sexual abuse.  He was ultimately sentenced to forty-six months of imprisonment, followed by three years of supervised release, and deportation.  Jiménez appealed the district court's enhancement of his GSR and its determination that his prior conviction for attempted third degree sexual abuse was a crime of violence.  The Fifth Circuit affirmed his sentence.  United States v. Jiménez-Banegas, 209 F. App'x 384 (5th Cir. 2006).

On July 30, 2012, and pertinent to this appeal, Jiménez was once again found in the United States.  He was arrested by United States Border Patrol Agents in Maine[2] and charged with violating 8 U.S.C. §§ 1326(a) and (b)(2) because he was found in the United States without authorization after having been removed from the United States "subsequent to a conviction for an aggravated felony" as described in 8 U.S.C. § 1101(a)(43).  During Jiménez's initial appearance, the court advised him that "[t]his is an offense that has a potential penalty of up to 20 years['']

---

[2]  Jiménez and another man, José Reina, were stopped for being in a vehicle which had no visible license plate.  When stopped, both men produced Honduran identification, and Jiménez provided a false name.  The United States Border Patrol conducted a record check using Jiménez's fingerprints, which revealed his true identity and that he had been previously removed from the United States on multiple occasions.

imprisonment."  Jiménez was asked if he understood the charges against him and the potential penalties, to which he replied in the affirmative.

On August 16, 2012, a one-count indictment was filed. The indictment caption cited 8 U.S.C. §§ 1326(a) and (b)(2) as the relevant statutory provisions, recounted Jiménez's three prior deportations from the United States, and stated that he had violated "Title 8, United States Code, Sections 1326(a) and (b)(2)."  It, however, did not specifically mention that any of Jiménez's prior deportations occurred after a conviction for an aggravated felony.

On November 20, 2012, at the change of plea hearing, the district court advised Jiménez that "by pleading guilty to this crime," he was "subject to being placed in jail for a period not to exceed twenty years," that he was "subject to being placed on supervised release for a period not to exceed three years," and that he could be deported.  Asked if he understood, Jiménez responded in the affirmative.  Jiménez then entered a straight guilty plea to Count One of the indictment, which the district court accepted.

The PSR was disclosed to the parties on January 31, 2013.  It stated that the maximum term of imprisonment was twenty years pursuant to 8 U.S.C. § 1326(b)(2).  According to the PSR, Jiménez's base offense level was eight under U.S.S.G. § 2L1.2(a).

The PSR applied a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Jiménez was convicted in 2004 of attempted third degree sexual abuse and sentenced to eighteen months' incarceration, which rendered that offense a crime of violence under the Sentencing Guidelines. The PSR did not recommend an acceptance-of-responsibility reduction because Jiménez refused to discuss the pending federal offense with the probation officer. This resulted in a total offense level of twenty-four. Since Jiménez has a criminal history category of IV, the PSR calculated a GSR of seventy-seven to ninety-six months of imprisonment and a term of supervised release of not more than three years.

In February 2013, Jiménez objected to the PSR's recommendation to deny a three level reduction for acceptance of responsibility. He claimed that his reluctance to discuss the offense with the probation officer was not due to lack of remorse, but rather due to his attorney's advice not to discuss the case with anyone to avoid miscommunication because of Jiménez's language barrier.

In his sentencing memorandum filed on June 20, 2013, Jiménez admitted his 2004 conviction and acknowledged that he could not challenge the legality of that conviction. He alleged, however, that 8 U.S.C. § 1326(a) sets a two-year maximum period of incarceration for reentering the United States after having been

deported and that sentencing him to more than two years pursuant to the sentence enhancement provision of 8 U.S.C. § 1326(b)(2) would "violate the Fifth Amendment Due Process and Indictment Clauses, as well as the Sixth Amendment's jury trial provision," because "[n]either the Indictment nor the Government Version in this case listed an aggravated felony as being present in [his] case."

In response, the Government asserted that under Almendarez-Torres v. United States, 523 U.S. 224 (1998), the fact of a prior conviction need not be alleged in an indictment or submitted to a jury, and that, in any event, the indictment in this case alleged a violation of 8 U.S.C. §§ 1326(a) and (b)(2) and the latter prescribes a statutory maximum of twenty years. It also emphasized that Jiménez was advised at the change-of-plea hearing that the statutory maximum was twenty years, and that he admitted the fact of the aggravated-felony conviction that triggered § 1326(b)(2).

The sentencing hearing took place on August 2, 2013. There, Jiménez conceded that his 2004 conviction of attempted third degree sexual abuse was "valid," and that it was a conviction for an "aggravated felony." The district court asked Jiménez whether he was moving to withdraw his guilty plea, to which Jiménez responded in the negative.

The district court held that Jiménez's argument regarding the statutory maximum penalty was "foreclosed by the current state

of Supreme Court authority."  The court noted that Jiménez was on notice of the enhanced penalty before he pleaded guilty and that the court had also advised him of the increased penalty during the change-of-plea proceedings.  Thus, it concluded that the twenty year maximum under § 1326(b)(2) was applicable.

The district court determined that Jiménez's base offense level was eight under U.S.S.G. § 2L1.2(a), and that a sixteen level enhancement was appropriate under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because Jiménez had reentered the United States subsequent to having been deported after a conviction for "a crime of violence." The court granted a three-level reduction for Jiménez's acceptance of responsibility, resulting in a total offense level of twenty-one.  This, in conjunction to Jiménez's criminal history category of IV, yielded a GSR of fifty-seven to seventy-one months of imprisonment.

The court then considered the 18 U.S.C. § 3553(a) sentencing factors and noted that Jiménez's non-immigration offenses separated him from most defendants appearing in court on immigration charges.  It also highlighted that Jiménez "has been unusually determined to return to the United States and . . . break the immigration laws of this country," and that, since his last sentence of forty-six months did not deter him, it would choose a higher sentence.  Ultimately, the court sentenced Jiménez to fifty-

seven months of imprisonment, at the bottom of the GSR. This timely appeal followed.

## II. Discussion

Jiménez alleges that because neither the indictment nor the "Prosecution Version" claimed that he was convicted of any "aggravated felony" prior to being deported, § 1326(b)(2) is inapplicable and his sentence greater than the two-year maximum allowed under § 1326(a) violates his Fifth and Sixth Amendment rights. We disagree.

Subsection (a) of 8 U.S.C. § 1326 "forbids an alien who once was deported to return to the United States without special permission, and it authorizes a prison term of up to, but no more than, two years." Almendarez-Torres, 523 U.S. at 226. "Subsection (b)(2) of the same section authorizes a prison term of up to, but no more than, 20 years for 'any alien described' in subsection (a), if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony.'" Id. (quoting 8 U.S.C. § 1326(b)(2)). Jiménez admits that he was deported subsequent to his conviction in 2004 for attempted third degree sexual abuse, which he concedes was a valid conviction for an aggravated felony. He also admits that he illegally returned to the United States after this conviction and subsequent deportation. He claims, however, that the enhanced penalty provision of § 1326(b)(2) is inapplicable because his aggravated felony conviction was not

-9-

included in his indictment or in the "Prosecution Version" of the facts giving rise to the offense. His argument is foreclosed by binding Supreme Court precedent.

In Almendarez-Torres, the defendant alleged that § 1326(b)(2) defined a crime separate from § 1326(a) and that his aggravated felony conviction was an element of the crime defined in subsection (b)(2), which needed to be mentioned in the indictment. Almendarez-Torres, 523 U.S. at 224. He claimed that because his indictment did not mention his earlier aggravated felony convictions, he could not be sentenced to more than two years' imprisonment, the maximum authorized for an offender without an earlier conviction. Id. The Supreme Court rejected the defendant's argument. It held that subsection (b)(2) "is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist." Id. at 226. Since it does not define a separate crime, the indictment does not have to mention an earlier conviction. Id. at 226-27.[3]

Recognizing that Almendarez-Torres is clearly on-point and forecloses his argument, Jiménez urges us not to follow it. He claims that we can imply from Apprendi v. New Jersey, 530 U.S. 466

---

[3] We note that even before Almendarez-Torres was decided, we had held that "§ 1326(b) should be construed as a sentence enhancement provision. The indictment therefore need not have alleged [defendant's] prior aggravated felony conviction to permit his sentencing under § 1326(b)." United States v. Forbes, 16 F.3d 1294, 1300 (1st Cir. 1994).

-10-

(2000),[4] and other more recent cases from the Supreme Court, that Almendarez-Torres is no longer good law. Jiménez predicts that if faced with this issue again, the Supreme Court would now rule that § 1326(b)(2) defines a separate crime and that the indictment must mention the prior aggravated felony conviction as an element of the offense. In support of his argument, he cites Descamps v. United States, 133 S. Ct. 2276 (2013); Alleyne v. United States, 133 S. Ct. 2151 (2013);[5] and Apprendi, 530 U.S. 466.

In Almendarez-Torres, the Supreme Court resolved the exact same issue raised here by Jiménez. In so doing, it clearly held that the indictment need not mention the prior aggravated felony conviction in order for the statutory maximum penalty of § 1326(b)(2) to be applicable to a defendant charged under § 1326 because it is a matter of recidivism, which "is as typical a sentencing factor as one might imagine." Almendarez-Torres, 523 U.S. at 230. Even though the Supreme Court has cast some doubt as to whether Almendarez-Torres was correctly decided, it has never revisited the issue or otherwise disavowed its application. Instead, it has stated that Almendarez-Torres is still binding.

---

[4] In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

[5] Alleyne extended Apprendi's rule to facts that increase the mandatory minimum. "Facts that increase the mandatory minimum sentence are . . . elements and must be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2158.

See Descamps, 133 S. Ct. at 2295 (Thomas, J., concurring) ("[T]his Court has not yet reconsidered Almendarez-Torres, which draws an exception to the Apprendi line of cases for judicial factfinding that concerns a defendant's prior convictions." (citation omitted)); Alleyne, 133 S. Ct. at 2160 n.1 ("In Almendarez-Torres we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today." (citation omitted)); Apprendi, 530 U.S. at 489-90 ("Even though it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset."). We have also held as much. See United States v. Rodríguez, 759 F.3d 113, 122 (1st Cir. 2014) (holding that Almendarez-Torres "remains good law" (quoting United States v. Carrigan, 724 F.3d 39, 51 n.4 (1st Cir. 2013))).[6]

---

[6]  In an attempt to distinguish his case from Almendarez-Torres, Jiménez also claims that, unlike the defendant in that case, he "did not admit any prior conviction" for an aggravated felony. However, the record belies his statement. The record clearly shows that Jiménez was advised at his initial appearance and at the change of plea hearing that the offense charged had a potential penalty of up to twenty years' imprisonment. Also, the caption of the indictment, as well as the synopsis that was filed therewith reflected that he was subject to up to twenty years of imprisonment

Furthermore, the Supreme Court has clearly stated that we should not conclude that its more recent cases have, by implication, overruled an earlier precedent. Specifically, in Agostini v. Felton, 521 U.S. 203, 237 (1997), the Supreme Court stated as follows: "We reaffirm that 'if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" Id. (quoting Rodríquez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989)).

In light of the foregoing, we conclude that neither the indictment nor the "Prosecution Version" had to mention Jiménez's prior aggravated felony conviction in order for him to be subject to the twenty-year maximum sentence allowed under § 1326(b)(2).

### III.  Conclusion

Jiménez's argument is foreclosed by binding Supreme Court precedent. Unless and until said court overrules its own decision, we must follow it. Accordingly, Jiménez's sentence is affirmed.

**AFFIRMED**.

---

under 8 U.S.C. § 1326(b)(2), thus putting him on notice of the enhanced penalty before he pleaded guilty. Jiménez then admitted the fact of the aggravated-felony conviction. Through his sentencing memorandum, he admitted that he had the 2004 conviction and that he could not challenge its legality. Afterwards, at the sentencing hearing, Jiménez conceded that his 2004 conviction was "valid" and that it was a conviction for an aggravated felony. He was then asked whether he was moving to withdraw his guilty plea, to which he responded in the negative.