UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Deybi Wagner Santana-Zapata

   v.                                 Civil No. 15-cv-016-LM
                                          Opinion No. 2015 DNH 200

United States of America


## **O R D E R**

Deybi Wagner Santana-Zapata pleaded guilty in this court to one count of reentry after deportation and was sentenced to 46 months in prison.  He now moves pursuant to 28 U.S.C. § 2255 to withdraw his guilty plea and vacate his sentence.  The court appointed counsel to represent him and, on October 23, 2015, held an evidentiary hearing.  For the reasons that follow, the court denies Santana-Zapata's motion.


## **Background**

In March 2014, a grand jury indicted Santana-Zapata on one count of reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Cr. doc. no. 7.[1]  On June 10, 2014, Santana-Zapata pleaded guilty.  At his change of plea hearing, Santana-Zapata stated that he understood that he was subject to

---

[1] "Cr. doc. no." refers to document numbers in the docket of the underlying criminal proceeding (No. 14-cr-024-LM).  "Doc. no." refers to document numbers in the instant proceeding.

a maximum sentence of 20 years in prison. At his sentencing hearing on September 29, 2014, the court calculated Santana-Zapata's guideline range to be 46-57 months of imprisonment. Santana-Zapata's counsel, Jonathan Saxe, argued for 24 months; the prosecutor argued for 46 months. The court sentenced Santana-Zapata to a 46-month prison term. Cr. doc. no. 25.

On January 13, 2015, Santana-Zapata filed a motion to vacate his sentence, arguing that his lawyer was ineffective for several reasons, primarily for failing to advocate for a downward departure under United States Sentencing Guideline § 5K3.1, the fast track program for illegal reentry cases. In an order dated March 18, 2015, the court found Santana-Zapata's contention with respect to the fast track program meritless and unworthy of an evidentiary hearing for the reasons stated in the government's objection. Doc. no. 5. The court appointed a lawyer for Santana-Zapata and held in abeyance a ruling on whether an evidentiary hearing was necessary to resolve Santana-Zapata's other ineffective assistance of counsel claims until the lawyer had an opportunity to review the case.

On June 23, 2015, Santana-Zapata filed a supplement to his § 2255 motion, doc. no. 9, in which he asserts three claims of ineffective assistance of counsel. First, he argues that his plea was not knowing and voluntary because he entered the plea

2

on his counsel's assurance that the government would "go light" on him at the sentencing hearing.  Second, he argues that his counsel failed to object to his Presentence Report ("PSR") on the basis of Apprendi v. New Jersey, 530 U.S. 466 (2000), thereby subjecting him to a 20-year maximum sentence.  Third, he argues that his counsel failed to file a notice of appeal on his behalf.[2]  The government objects.  Doc. nos. 4 & 11.

By order dated September 2, 2015, the court scheduled a hearing to resolve factual disputes on the first and third claims.

## Analysis

Under § 2255, a federal prisoner may ask the court to vacate, set aside or correct a sentence on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  When the prisoner's claims are

---

[2] Santana-Zapata asserts a host of other ineffectiveness claims in his § 2255 filings, including that his counsel did not consult with him prior to sentencing, did not investigate mitigation evidence, and did not assert mitigation arguments at his sentencing hearing.  At the October 23 evidentiary hearing, however, Santana-Zapata limited the claims currently before the court to only those claims asserted in his supplement (doc. no. 9).

3

based on ineffective assistance of counsel, as they are here, the prisoner "must demonstrate both: (1) that counsel's performance was deficient, meaning that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense." Rossetti v. United States, 773 F.3d 322, 327 (1st Cir. 2014) (internal quotation marks omitted), cert. denied, 135 S. Ct. 1751 (2015) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A failure to meet either the deficiency or prejudice prong will defeat an ineffective assistance of counsel claim. Strickland, 466 U.S. at 697.

The burden on a prisoner who alleges that counsel rendered constitutionally inadequate representation is "highly demanding" and "heavy." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 393 (2000)).

> In assessing the adequacy of appointed counsel, [the court] indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, . . . finding deficiency only where, given the facts known to counsel at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it . . . . And, to establish prejudice, a defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Rossetti, 773 F.3d at 327 (internal quotation marks and citations omitted). To establish prejudice with respect to a sentencing hearing, a petitioner must show "that but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence." Peralta v. United States, 597 F.3d 74, 79 (1st Cir. 2010) (internal quotation marks omitted).

The court may either summarily dismiss a prisoner's § 2255 claim or grant an evidentiary hearing to determine if it is meritorious. 28 U.S.C. § 2255(b) provides that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

In evaluating whether an evidentiary hearing is required, the court "take[s] as true the sworn allegations of fact set forth in the petition unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (internal quotation marks and citation omitted).

Because there are factual disputes with respect to Santana-Zapata's claims about his understanding of the plea agreement and his lawyer's failure to file a notice of appeal, the court

held an evidentiary hearing on those claims. The remaining claim, i.e, his Apprendi-based argument, raises a question of law which does not require an evidentiary hearing. The court first addresses the Apprendi-based claim, and then turns to the two claims on which the court received evidence.

I.   Santana-Zapata's Apprendi-based claim

Santana-Zapata asserts an Apprendi-based argument that his defense counsel was ineffective for failing to object to the PSR. The PSR recited a maximum penalty of 20 years because Santana-Zapata had illegally reentered the country subsequent to both deportation and a conviction for an aggravated felony. See 8 U.S.C. § 1326(b)(2). Without the conviction for an aggravated felony, Santana-Zapata would have been subject to a maximum penalty of only 2 years. See 8 U.S.C. § 1326(a).

Santana-Zapata argues that he would not have been subjected to the 20-year maximum had his lawyer argued that the maximum penalty did not apply because neither the indictment nor the plea agreement (i.e., its recitation of the elements of the offense and offense conduct) contained a specific reference to the prior aggravated felony conviction. Santana-Zapata concedes, as he must, that the indictment cites the aggravated penalty section of the statute, § 1326(b)(2), and that the plea agreement's penalty section recites the maximum penalty as 20

6

years. Additionally, he admitted at his change of plea hearing that his maximum exposure was 20 years. Cr. doc. no. 29 at 15-16.

Santana-Zapata further concedes that the law forecloses the precise legal argument he faults his defense counsel for not making. See Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998); United States v. Jimenez-Banegas, 790 F.3d 253, 258 (1st Cir. 2015) ("In Almendarez-Torres, the Supreme Court . . . clearly held that the indictment need not mention the prior aggravated felony conviction in order for the statutory maximum penalty of § 1326(b)(2) to be applicable to a defendant charged under § 1326 . . . ."); see also Apprendi, 530 U.S. at 489-90 (acknowledging that the Court was not revisiting its holding in Almendarez-Torres).

With no case law on which to rest his Apprendi-based ineffective assistance claim, Santana-Zapata asserts a novel, but unpersuasive, argument about an alleged policy of the probation department that his counsel should have invoked. Specifically, Santana-Zapata alleges that the probation department in this district acts unilaterally to treat Almendarez-Torres as if it had been overruled. He argues that, had his counsel asserted that his aggravated felony was required to be listed as an element in the indictment, an argument that

the Court squarely rejected in Almendarez-Torres and that the First Circuit recently rejected in Jimenez-Banegas, 790 F.3d at 258, the probation department would have, per its extralegal policy, altered the PSR to state a maximum penalty of 2 years.

This argument fails both prongs of Strickland. First, it is not deficient performance for an attorney to forego arguments that lack merit. Taking Santana-Zapata's allegations as true, if the probation department actually had such a policy and Santana-Zapata's counsel was aware of the policy, it would not have been deficient for counsel to conclude that reliance on the policy would be foolish because that position is directly contradicted by controlling case law. That conclusion would be especially warranted here, where Santana-Zapata was indisputably subject to a 20-year maximum sentence and counsel's goal at the sentencing hearing was to argue in favor of mitigation in hopes of reducing the length of his client's sentence.

Santana-Zapata's Apprendi-based argument also fails under the second prong of Strickland, as he cannot establish prejudice. Santana-Zapata argues that his counsel was ineffective for not having relied on a flawed legal argument at his sentencing hearing, while hoping that both the government and the court would be unaware of the law. The concept of ineffective assistance of counsel does not operate in this

fashion.  The Strickland prejudice inquiry operates on the presumption "that the judge or jury acted according to law." Strickland, 466 U.S. at 694.  "A defendant has no entitlement to the luck of a lawless decisionmaker . . . .  The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."  Id. at 695.

In making the prejudice determination, a court "must consider the totality of the evidence before the judge . . . ." Id.  In this case, the plea agreement listed the maximum penalty as 20 years and at his change of plea hearing, the court informed Santana-Zapata that he could be sentenced to a maximum of 20 years.  Santana-Zapata does not dispute that he had a prior aggravating felony that qualified him for the 20-year maximum sentence.  At his sentencing hearing, any objection by counsel to the failure of the indictment (or plea agreement) to specify the prior conviction would have been properly overruled. See Almendarez-Torres, 523 U.S. at 226-27; Jimenez-Banegas, 790 F.3d at 258.  The presumption under Strickland that a court acts in accordance with the law defeats Santana-Zapata's prejudice argument.

For these reasons, Santana-Zapata's Apprendi-based ineffective assistance claim is meritless.

II.  Claims on which the court heard evidence

The court held an evidentiary hearing to resolve factual disputes on Santana-Zapata's claims that (1) his lawyer assured him that the prosecutor would "go light" at his sentencing hearing and he would not have entered the plea had he known otherwise, and (2) his lawyer failed to file a notice of appeal. The court addresses each claim below.

A. Plea agreement

Santana-Zapata claims that his counsel was ineffective because he assured Santana-Zapata that the government would "go light" on him at his sentencing hearing and not argue "forcefully for a 46-month sentence."  He alleges that but for his counsel's ineffective assistance he would not have entered a guilty plea.  As a result, Santana-Zapata asserts that his plea was not knowingly and voluntarily entered.

"Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." Padilla v. Kentucky, 559 U.S. 356, 364 (2010) (internal quotation marks omitted).  As discussed above, to show ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 697.  "In the guilty plea context, [prejudice] means [a

10

petitioner] has to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Moreno-Espada v. United States, 666 F.3d 60, 64 (1st Cir. 2012) (internal quotation marks omitted).

"It is well-established in the First Circuit that 'an inaccurate prediction about sentencing will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel.'"  Alcott v. United States, No. 04-CR-10286-PBS, 2009 WL 2848669, at *5-6 (D. Mass. Sept. 2, 2009) (quoting Knight v. United States, 37 F.3d 769, 775 (1st Cir. 1994)).  Further, "it is well settled that post-sentencing buyer's remorse is not a valid basis on which to dissolve a plea agreement and the fact that a defendant finds himself faced with a stiffer sentence than he had anticipated is not a fair and just reason for abandoning a guilty plea."  Moreno-Espada, 666 F.3d at 67 (internal quotation marks omitted).  "A guilty plea will not be set aside where a defendant has had a change of heart simply because . . . he is not satisfied with the sentence he has received."  Id. (quoting Miranda-González v. United States, 181 F.3d 164, 165 (1st Cir. 1999)).

In the plea agreement, the prosecutor agreed to recommend that the defendant receive a sentence at the low end of the

applicable sentencing guidelines range.  There is no dispute that Santana-Zapata understood the terms of the plea agreement and that, before pleading guilty, he told the court that there were no "promises of leniency or any other inducement of any kind to enter a guilty plea other than whatever statements are contained in his plea agreement."  Cr. doc. no. 29 at 22. Santana-Zapata testified that he failed to tell the court of the promise to "go light" because, as his counsel explained it to him, "it wasn't actually necessary."

Attorney Saxe testified that there was never any understanding that the prosecutor would "go light" at the sentencing hearing.  Rather, Saxe had a clear memory of the prosecutor taking an uncompromising view that a guideline sentence was the appropriate sentence.  Saxe's testimony is consistent with the terms of the plea agreement and the prosecutor's argument in favor of the 46-month sentence at the sentencing hearing.  Saxe testified that it is unlikely that he would have informed Santana-Zapata of any promise to "go light" because there was no such promise.

The court finds that the evidence clearly establishes Santana-Zapata entered his plea knowingly and voluntarily.  At the time he entered the plea, Santana-Zapata understood that: he was subject to a maximum prison sentence of 20 years; his

guideline range would likely be 46-57 months; the prosecutor would argue for 46 months; his attorney would argue for 24 months; and his attorney believed he had an excellent chance of receiving a sentence in the range of 24-30 months. On cross, Santana-Zapata conceded that the "promise" to "go light" was in actuality a "prediction" on his counsel's part that he would receive a lighter sentence than the bottom of his guideline range.

The law in this circuit is clear. Attorney Saxe's inaccurate prediction that Santana-Zapata would receive a below-the-guideline sentence cannot sustain a claim of ineffective assistance of counsel. See Knight, 37 F.3d at 775. Santana-Zapata has not sustained his burden on this claim.

B. Notice of appeal

Santana-Zapata's final claim is that his counsel ignored his instruction to file a notice of appeal to challenge his 46-month sentence. If true, there is a presumption that Santana-Zapata has stated a meritorious claim for ineffective assistance of counsel. See Roe v. Flores-Ortega, 528 U.S. 470, 484 (2000) (holding that where a defendant "instruct[s] counsel to perfect an appeal, [he has] objectively indicated his intent to appeal and [is] entitled to a new appeal without any further showing"); see also Hernandez v. Reno, 238 F.3d 50, 57 (1st Cir. 2001)

13

("counsel's failure to comply with a defendant's request to appeal would be treated as prejudice per se").

Santana-Zapata testified that, following his sentencing hearing, he instructed Attorney Saxe to file a notice of appeal but Saxe ignored that instruction. The court did not find his testimony on that point credible. Saxe had no memory of any meeting with Santana-Zapata but testified persuasively that it is his practice to file a notice of appeal when his client requests it, even where, as is the case here, a client's plea agreement contains a waiver of appellate rights should he receive a sentence within the guideline range. Santana-Zapata has not met his burden of proving that he instructed Saxe to file a notice of appeal.

Because Santana-Zapata has not carried his burden of showing that his trial counsel's conduct fell below the standard of reasonably effective assistance, he has not shown that he was convicted and sentenced "in violation of the Constitution or laws of the United States." Consequently, he is not entitled to relief under 28 U.S.C. § 2255.

**Conclusion**

For the foregoing reasons, Santana-Zapata's motion for relief under 28 U.S.C. § 2255 (doc. no. 1) is denied. Because Santana-Zapata has not made a substantial showing of the denial

14

of a constitutional right, the court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Rule 11, Federal Rules Governing § 2255 Cases.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 28, 2015

cc: Richard Guerriero, Esq.
    Seth R. Aframe, Esq.